IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIFFANY SYKES, on behalf of herself and all other plaintiffs similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; and ELMBROOK SKILLED NURSING FACILITY LLC,<br><br>Defendants. | Case No. 1:21-cv-03190<br><br>Judge: Hon. Ronald A. Guzman<br><br>Magistrate Judge: Hon. Jeffrey Cole |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF
CLAIMS PURSUANT TO FED.R.CIV.P. 23.**

Plaintiff Tiffany Sykes ("Plaintiff"), on behalf of herself and all others similarly situated, for this Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Claims Pursuant to Fed. R. Civ. Pro. 23 states as follows:

**I. INTRODUCTION**

Plaintiff seeks preliminary approval of the class action Settlement Agreement and Release (the "Agreement" attached as Exhibit 1) that impacts the claims of approximately 4,437 current or former employees. After extensive arm's length negotiations and exchange of payroll data along with a settlement conference with Magistrate Cole, the parties feel that they have reached a fair compromise of the claims.

This case involves allegations that Legacy Healthcare Financial Services, LLC and Elmbrook Skilled Nursing Facility, LLC (collectively, "Defendants") incorrectly computed the regular rate of pay for overtime purposes under certain circumstances and, thus, did not fully

1

compensate certain employees for overtime. Plaintiff alleged that Defendants did not include additional non-discretionary bonuses, in particular, incentives for working during the COVID-19 Pandemic when there were labor shortages, when calculating the overtime rate of pay for hourly non-exempt employees. Defendants deny any liability.

For the reasons below, Plaintiff requests this Court enter an order, in the form attached hereto as Exhibit 2, that (1) grants preliminary approval of the Proposed Class Action Settlement; (2) certifies the Class for settlement purposes; (3) approves the proposed Notice; (4) sets a hearing date for Final Approval of Settlement; and (5) approves the Settlement Agreement. (Exhibit 1)

## II. THE PROPOSED CLASS SETTLEMENT

Defendants agreed to pay $1,300,000.00 into a settlement fund. This amount is referred to as the Gross Settlement Fund in the Parties' Settlement Agreement. The allocation of the Gross Settlement Fund is as follows and is based on payroll information provided by Defendants. The Illinois Class Members and FLSA Collective Members are collectively referred to as "Class Members".

**1). Illinois Class Members and FLSA Collective Members will receive approximately 90% of alleged unpaid overtime wages, FLSA liquidated Damages, and Illinois Minimum Wage Law statutory damages:**

Illinois Class Members are those individuals employed by Defendant Releasees, as defined in the Agreement,[1] during the period of June 14, 2018 to the date of Preliminary Approval ("Class

---

[1] The Agreement defines "Defendant Releasees" as follows: "Legacy Healthcare Financial Services, LLC, Elmbrook Skilled Nursing Facility, LLC, and any skilled healthcare facility managed by Legacy at issue at any time during the Class Period (defined below) pursuant to a management services agreement. Defendant Releasees include each of those entities' past, present and future subsidiaries, partners, affiliates, business units, members, managers, representatives, successors, assigns, directors, officers, employees, agents, trustees and insurers." *See* Agreement § II.A.

2

Period"), who were non-exempt hourly-paid workers in Illinois and who have damages identified in Exhibit A of the Agreement. FLSA Collective Members are those individuals who were employed by Defendant Releasees during the Class Period as non-exempt, hourly-paid workers and have damages identified by Class Counsel in Exhibit A of the Agreement. As described herein, individuals join the FLSA Collective by cashing, depositing, endorsing, or otherwise negotiating their settlement award checks.

Plaintiff's Counsel computed the alleged unpaid overtime wages from the Defendants' payroll data for the period beginning in June 2018. This was based on the three-year limitations period available under the Illinois Minimum Wage Law ("IMWL") and the maximum potential statute of limitations under the applicable federal statute, the Fair Labor Standards Act ("FLSA"). As explained above, Plaintiff alleges the Defendants miscalculated overtime for the named Plaintiff and each Class Member by failing to include certain additional compensation when calculating the regular rate of pay for overtime purposes during certain pay periods.

During this same period, the Defendants did pay to some class members back overtime wages, and in the computation of damages, Defendants were credited any back overtime wages actually paid to an employee against the calculated owed overtime wages and statutory damages.

As a result of this settlement, Class Members are receiving approximately 90% of all back overtime wages, FLSA liquidated damages and applicable IMWL statutory damages (for Illinois Class Members) before attorney fees and costs, administrator fees and costs and service awards. Additionally, the settlement creates a floor wherein the minimum gross award any class member will receive is $5.00.

**2). In Total, Class Members Will Receive More Than 100% of Alleged Back Overtime Damages:**

The FLSA allows an amount equal to overtime damages to be awarded as liquidated damages under certain circumstances. Additionally, the IMWL allows for the recovery of treble overtime damages and a 5% monthly penalty on unpaid overtime wages under certain circumstances (depending on the timing of a particular class member's employment). Here, class members will receive gross settlement payments of approximately 90% of not only their alleged unpaid overtime wages, but also 90% of an equal amount representing FLSA liquidated damages, plus for Illinois Class Members another 90% of an equal amount representing the treble damages available under the IMWL, in addition to 90% of the monthly penalty available under the IMWL of overtime damages per month from the date each portion of alleged damages were incurred and through June 1, 2022.

To give the Court an actual example: Employee #87911 was alleged to have $117.49 in back overtime wages, $117.49 in FLSA liquidated damages, and $458.21 in IMWL treble and monthly penalty damages. After accounting for requested attorney fees and costs, administrator fees, and service award, this worker is estimated to receive $331.45. This amounts to this class member receiving her alleged overtime wages due plus additional compensation reflecting a substantial portion of FLSA liquidated damages and IMWL treble and monthly penalty damages.

Any Class Member who opts out will not be entitled to his or her share of the Gross Settlement Fund, and he or she will not be a part of this Agreement or release any claims.

**3. Settlement Payment Schedule:** To effectuate this Settlement, Defendants have agreed to make a payment into a Qualified Settlement Fund ("QSF") as detailed in Section III(A) of Exhibit 1. In summation, Defendants will pay a total of $1,300,000 into the QSF within 30 business days of the Final Effective Date (*see* Section V.A of the Agreement.) Class Settlement Payments and the Service Award will be mailed within 45 days after the Final Effective Date and

Attorneys' Fees and Costs will be paid solely from the QSF 5 business days thereafter. Appropriate taxes will be withheld from the Settlement Payments and calculated by the Administrator.

**Settlement Administrator Fees and Costs**: The parties have agreed to use Simpluris as the Settlement Administrator. The Administrator estimates that its fees and costs will be $22,495.

**Attorney Fees**: Class Counsel will request one-third of the Gross Settlement Fund as an award of attorney's fees and reimbursement of reasonable costs and expenses. These costs and expenses will not exceed $3,500.

**Service Award:** Plaintiff seeks $7,500 as a Service Award for the services rendered to the Class Members.

**Release**: The Class Members are not signing a general release for non-wage claims. In exchange for their respective Settlement Payments, the Illinois Class Members (excepting any persons who may choose to opt-out and therefore not receive any payment) are providing a release relating to their Illinois and local wage-related claims as set forth in the Settlement Agreement. FLSA release language will be written on the settlement checks and by individuals cashing, depositing, endorsing, or otherwise negotiating their checks, including Illinois Class Members, they will be consenting to join the FLSA settlement and release their FLSA, federal, state, and local wage claims against Defendant Releasees. The signed consents will be filed with the Court within 200 days of the issuance of the checks.

**Notice:** Notice to the Class Members will proceed by a mailing through first class mail that details the approximate specific gross amount of money that is proposed to be paid to that employee. The Parties' proposed notice to the Illinois Class Members is attached to the Settlement Agreement and is attached to this motion as Exhibit 3.1 and the proposed notice to non-Illinois potential FLSA Collective Members is attached as Exhibit 3.2.

### III. THE PROPOSED CLASS SETTLEMENT PROCEDURE IS APPROPRIATE

Rule 23 class settlements with FLSA releases upon Class members negotiating their settlement check are appropriate and this settlement mechanism has been approved numerous times by courts in this District. *See Wolfe v. TCC Wireless, LLC,* 2018 WL 11215318, at *6 (N.D. Ill. Mar., 12, 2018) (granting final approval where FLSA release upon "Class Members and Opt-in Plaintiffs … negotiat[ing] their settlement checks."); *McCue v. MB Financial, Inc.,* 2015 WL 4522564, at *4 (N.D. Ill. Mar. 2, 2016) (approving settlement as fair and reasonable when "all Released Federal Law Claims by all Class Members who negotiate their Settlement Checks." And "Class Members who negotiate their Settlement Checks also irrevocably consent to join and opt-in to the FLSA collective action."); *Besic v. Byline Bank, Inc.,* 2015 WL 13763028, at *3 (N.D. Ill. Oct. 26, 2015) ("Any Eligible Class Member who signs and cashes or otherwise negotiates a Settlement Check shall irrevocably consent to join or "opt-in to" this lawsuit as a plaintiff and shall release and wage and hour claims of any kind"); *Young v. Rolling In The Dough, Inc.,* 2020 WL 969616 *2 (N.D. Ill. Feb. 27, 2020) (approving settlement where "Class Members who cash or otherwise negotiate their checks" agree to the release printed on the back of the settlement check.); *Sanchez v. Roka Akor Chicago, LLC,* 2017 WL 1425837, at *1 (N.D. Ill. April 20, 2017) (approving FLSA settlement where "[a]ll persons in the Settlement Class who negotiate (i.e., cash or deposit) a Settlement Check shall be deemed to have consented to join the litigation and shall be a party to the case under the FLSA."); *Zolkos v. Scriptfleet, Inc.,* 2015 WL 4275540 (N.D. Ill. July 13, 2015).

The proposed class settlement here mirrors previously approved settlements and, as such, is appropriate and should be approved. Under the proposed notice Rule 23 Class members (herein referred to as "Illinois Class Members") are given the opportunity to opt-out of the settlement if

they do not wish to participate. These Rule 23 Class members, who are also part of the potential FLSA collective, join the FLSA suit and release their FLSA claims by cashing, depositing, endorsing, or otherwise negotiating the check. If a Rule 23 Class Member opts out of the Class, then they are not a Rule 23 Class member and will receive no settlement payment. If they do not opt-out, then they are a member of the Rule 23 Class and IMWL claims are released. However, they have not joined the FLSA suit and are not released from FLSA claims until they cash, deposit, endorse, or otherwise negotiate their settlement check. If they do not cash, deposit, endorse, or otherwise negotiate their settlement check, then they are not agreeing to release their FLSA claim. Those Non-Illinois individuals are not part of the Rule 23 class and, instead, are only potential FLSA Collective Members and would join the Collective by signing their settlement check.

## V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### 1.) Class Action Settlement Approval Process

Approval of class action settlements is typically a three-step process: (1) preliminary approval of the settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval.

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). If so, the court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

**2.) The Criteria for Preliminary Settlement Approval Are Satisfied**

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiff's case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir.

8

2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

### a. Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment

Here, the Class Members are recovering approximately 90% of alleged unpaid overtime wages including 90% FLSA liquidated damages and 90% IMWL statutory damages as calculated by Class Counsel. A key consideration in evaluating a proposed settlement is the strength of the plaintiff's case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiff's claims. *Id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). Plaintiff believes that this

9

case is an excellent result for Class Members and that they are receiving nearly everything they could have likely received at trial if they prevailed on the merits. This includes 90% of FLSA liquidated damages for each class member without requiring them file a claim form to receive their settlement payment. Additionally, Plaintiff has not obtained class certification. The Defendants had defenses in this case that the incentive payments did not need to be included in the regular rate, or that liquidated damages should not be awarded, among other defenses. Additionally, they would have argued against certification because, among other reasons, the allegations involved numerous distinct corporate entities. By settling, Class Members are assured of a recovery.

### b. Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants would continue to vigorously defend the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013). Moreover, it cannot be ignored that this settlement puts

money in the hands of Class Members when they need it the most, as the nation continues to endure a world-wide pandemic and economic crisis.

### c. At This Preliminary Stage, There is No Opposition to the Settlement

The Plaintiff supports the settlement, as does her Counsel and Defendants. At this preliminary stage, Plaintiff's Counsel is unaware of any opposition to the settlement.

### d. Opinion of Counsel

Plaintiff's counsel has substantial experience in employment litigation and class action litigation and attaches a Firm Resume and affidavit in support of this settlement as Exhibits 4.1 and 4.2. Plaintiff's Counsel had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiff's Counsel's opinion, the settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strengths and weaknesses of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

Defense Counsel is likewise experienced and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Defense Counsel's opinion, the Settlement is fair and more than adequate for the class members.

Even if Plaintiff obtained certification, survived summary judgment, and succeeded at trial, each class member might obtain *less* money than what they are currently awarded in this settlement. It is in all parties' best interests to settle this matter to ensure payment to a class.

### e. The Settlement Was the Result of Arm's Length Negotiations Without Any Collusion.

The Settlement was the result of adversarial, arm's length negotiations for several months and after reviewing payroll data produced by Defendants. Moreover, it was accomplished with the assistance of the Honorable Jeffrey Cole in a settlement conference spanning many hours. After the conference, Judge Cole wrote that "the quality of the legal work that was provided by the lawyers on both sides of this case was exceptional and as skillful as I have ever seen." Dkt. 39.

In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair"). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

### VI. THE PARTIES PROPOSED NOTICE PROGRAM

The notice procedure identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner

to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23.

### VII. SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e).

### VIII. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

#### 1.) PROPOSED CLASS ACTION DEFINITION

The "Illinois Class Members" are those individuals who were employed by any of the Defendant Releasees during the period of June 14, 2018 to the Preliminary Approval Date (the "Class Period") as non-exempt, hourly-paid workers in Illinois and have damages identified by Class Counsel in Exhibit A to the Settlement Agreement. The "FLSA Collective Members" are those individuals who were employed by any of the Defendant Releasees during the Class Period as non-exempt, hourly-paid workers and have claims for damages as identified by Class Counsel in Exhibit A to the Agreement. Excluded from the Settlement Class are those who choose to exclude themselves. The Illinois Class and potential FLSA Collective is ascertainable, and it consists of those persons who are identified on Exhibit A to the Settlement Agreement. Exhibit A also contains the estimated recovery before accounting for the requested attorneys' fees and costs,

administrator fee and service award.

### 2.) The Plaintiff Class Meets All Four Requirements of FRCP 23(a).

#### a. Numerosity

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). There are 4,437 combined Class and Collective members and this easily meets the numerosity standard. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(concluding that "generally . . . more than forty [is] adequate"); *see Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 336 (N.D. Ill. 2006)("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (18 members sufficient). As such, the numerosity standard is met.

#### b. Commonality

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there must be "questions of law or fact common to the class." "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556. "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The common question here is whether Defendants improperly calculated the regular rate of pay when paying overtime to employees.

#### c. Typicality

Plaintiff meets the typicality requirement. "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). Plaintiff alleges that Defendants utilize the same policy of calculating certain compensation as part of the regular rate of pay for overtime purposes. As such, Plaintiff's claims arise out of the same course of conduct and the same payment practices.

### d. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the instant case, Plaintiff worked for Defendant Elmbrook Skilled Nursing Facility, LLC and alleged she suffered from overtime underpayments and was under the same allegedly unlawful practice as all other non-exempt employees. She has been cooperative throughout this litigation. As the Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiff's claims pose no conflicts whatsoever with those of the other Class members because their claims and those of the entire Class turn on the alleged existence and implementation of certain wage policies, which are alleged to have improperly calculated the regular rate for overtime purposes. Therefore, Plaintiff's financial interests are not in conflict with those of other Class members. Adequate representation also requires competent and experienced counsel able to conduct the litigation. *Amchem*, 521 U.S. at 625; *Eggleston*, 657 F.2d at 896. While experience in class action litigation is a factor favoring counsel's qualification, general

litigation skills and federal court experience are also pertinent. Fed. R. Civ. P. 23(g). Plaintiff's counsel has substantial experience in employment litigation and class action litigation and has attached a resume in support of this settlement as Exhibit 4.

### 3.) Plaintiff Meets the Requirements of FRCP 23(b)(2).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff meets the requirements of Rule 23(b)(2).

### 4.) Plaintiff Meets the Requirements of FRCP 23(b)(3).

FRCP 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

#### a. Predominance

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also*, *e.g., Jenkins* v. *Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil,* 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the

16

common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler,* 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issue is whether Defendants properly paid their employees. This will boil down to an analysis of whether the overtime rate was properly calculated and whether employees were properly paid.

One issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *Gomez v. PNC Nationl Bank Assn,* 2014 WL 3640798, 12 c 1274 (N.D. Ill. 2014) (class certification appropriate even if some members did not perform unpaid work because this relates to damages); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998).

### b. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action. When inquiring into the matters pertinent to the findings of predominance and superiority, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D).

There is no compelling reason to adjudicate thousands of identical separate actions. Because of the uniformity of the factual and legal claims of the Class members, it would be needlessly repetitive if the Class members were forced to prosecute their claims individually. A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for both parties. With multiple claims, Defendants' legal expenses (owed to attorneys for both sides) could be

greater than the overall damages at stake in the class action.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff prays for an order (in the form attached hereto as Exhibit 2):

    i.    Granting preliminary approval of the Settlement in this matter;
    ii.    Certifying the proposed Settlement Class;
    iii.    Approving the form and content of the Notice to be sent to Class Members;
    iv.    Appointing Named Plaintiff Tiffany Sykes, as Class Representative;
    v.    Approving the appointment of Plaintiff-Class Counsel;
    vi.    Scheduling a final fairness hearing approximately 135 days from the date of preliminary approval;
    vii.    Granting such other relief as the Court deems appropriate under the circumstances.

Dated: July 10, 2022                         Respectfully Submitted,

                                                            By: _____/s/ John Kunze _____
                                                             One of Plaintiff's Attorneys

David Fish
John Kunze
Fish Potter Bolaños, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400